FILED

2011 Dec-27  PM 02:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ALABAMA

### SOUTHERN DIVISION

| | |
|---|---|
| **KBC ASSET MANAGEMENT NV,** on behalf of itself and all other similarly situated, ) ) ) ) | **Civil Action No. _____** |
| ) | **CLASS ACTION COMPLAINT** |
| **Plaintiff(s),** ) ) | |
| **vs.** ) ) | |
| **DONALD M. JAMES, PHILIP J. CARROLL, JR., PHILLIP W. FARMER, H. ALLEN FRANKLIN, ANN MCLAUGHLIN KOROLOGOS, DOUGLAS J. MCGREGOR, RICHARD T. O'BRIEN, JAMES T. PROKOPANKO, DONALD B. RICE, VINCENT J. TROSINO, and KATHLEEN WILSON-THOMPSON,** ) ) ) ) ) ) ) ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| **Defendants,** ) ) | |
| **and** ) ) | |
| **VULCAN MATERIALS COMPANY,** ) ) | |
| **Nominal Defendant.** ) | |

## INTRODUCTION

1.       This is a derivative and direct shareholder complaint by Plaintiff KBC Asset Management NV ("KBC") ("Plaintiff") on behalf of public shareholders of Vulcan Materials Company ("Vulcan" or the "Company") against Vulcan's Board of Directors ("Board") arising out of the Board's attempt to thwart the December 12, 2011 exchange offer proposed by Marietta Materials, Inc., ("Marietta") pursuant to which Marietta seeks to acquire all of the outstanding shares of Vulcan at a fixed exchange ratio of 0.50 shares of Martin common stock for each share of Vulcan common stock.

2.       Vulcan, through its Board, filed a lawsuit on December 19, 2011 in this Court seeking, *inter alia*, to enjoin the exchange offer.  The lawsuit predicates itself on Marietta's alleged breach of a confidentiality agreement that Marietta is allegedly using to seek the exchange offer. The purpose of the Board's attempt to prevent the exchange offer is not, however, in the interests of Vulcan's shareholders.  Indeed, the exchange offer provides significant bird-in-the-hand value to Vulcan's shareholders in light of  Vulcan's poor performance over the recent periods.  The exchange offer is in the best interests of Vulcan's shareholders as shareholders will reap significant synergistic upside as new holders of Marietta stock.

3.       The Board and Vulcan's management merely seek to entrench themselves in lucrative positions in Vulcan that would otherwise be wiped out if Marietta were to effectuate the exchange offer and acquire Vulcan.  In fact, the Board is so determined to thwart the exchange offer that they are depriving Vulcan's shareholders of the ability to decide for themselves whether or not the exchange offer is in their best interests.  On December 22, 2011, through the Board, Vulcan filed a Solicitation/Recommendation Statement on Schedule 14D-9 ("14D-9").  The ostensible purpose of the 14D-9 was to inform Vulcan shareholders of the reasons why the Board does not recommend in favor of them accepting the exchange offer with all the material financial and background

information justifying that recommendation.   But the 14D-9 does not provide this material information.

4.      The 14D-9 utterly fails to apprise shareholders of sufficient material information about the exchange offer and, thus, deprives them of the ability to make intelligent, informed and rational decisions about whether to accept Marietta's proposal.  Among other things, the 14D-9 provides zero insight into how the Board's financial advisor, Goldman, Sachs & Co. ("Goldman Sachs") determined that the exchange offer is not fair to Vulcan's shareholders from a financial standpoint.

5.      Thus, with this lawsuit, Plaintiff seeks to require the Board to provide Vulcan's shareholders with the missing material information in the 14D-9 so that they may intelligently assess the exchange offer.  Plaintiff also seeks to prevent the Board from further thwarting the opportunity presented to Vulcan's shareholders by Marietta's exchange offer proposal.

## VENUE AND JURISDICTION

6.       This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants. Further, greater than two-thirds of the Class members reside in states other than the state in which Defendants are citizens.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this District, and because Defendants:

(a) are authorized to conduct business in this District and have intentionally availed themselves of the laws and markets within this District; and

(b) conduct substantial business in this District.

This Court has personal jurisdiction over Defendants because a substantial portion of the conduct complained of herein took place in the State of Alabama and because Defendants are authorized to conduct business in this state and have sufficient minimum contacts with this state so as to render the exercise of personal jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**PARTIES**

8.      Plaintiff, through its sub-fund, KBC Index Fund, is a current shareholder of Vulcan common stock and was a shareholder at the time the transaction complained of was commenced. Pursuant to Exhibit A, attached hereto, KBC Index Fund has authorized this action and assigned all of its claims to Plaintiff.  Plaintiff is a Belgian corporation and commences this action on behalf of itself and all similarly situated shareholders.

9.      Nominal defendant Vulcan is a New Jersey corporation with its corporate headquarters located at 1200 Urban Center Drive, Birmingham, Alabama 35242.  Vulcan stock is publicly traded on the New York Stock Exchange under the ticker "VMC."

10.      Defendant Donald M. James ("James") is, and at all material times was, Chief Executive Officer ("CEO") and Chairman of the Board of Vulcan. James became a director of the Company in 1996 and Chairman and CEO in 1997.  James is also a director of Southern Company and Wells Fargo & Company.

11.      Defendant Philip J. Carroll, Jr. ("Carroll") is, and at all material times was, a director of Vulcan.  Carroll became a director of the Company in 1999.  From July 1998 to February 2002, Carroll was the retired Chairman and CEO of Fluor Corporation, Aliso Viejo, California (an engineering, construction and diversified services company).  Carroll also currently serves as a director of BAE Systems, Texas Medical Center, and Envirofuels, LLC.

12.    Defendant Phillip W. Farmer ("Farmer") is, and at all material times was, a director of Vulcan.  Farmer became a director of the Company in 1999.  From February 2003 until June 2003, Farmer served Chairman of the Board of Harris Corporation, Melbourne, Florida (an international communications equipment company).  Between June 2000 and February 2003, Farmer was also President and CEO of Harris Corporation.

13.    Defendant H. Allen Franklin ("Franklin") is, and at all material times was, a director of Vulcan.  Franklin became a director of the Company in 2001.  From April 2004 until July 2004 Franklin  served as Chairman and CEO of Southern Company, Atlanta, Georgia (a super-regional energy company in the Southeast), and from April 2001 to March 2004, Franklin also served as President of Southern Company.

14.    Defendant Ann McLaughlin Korologos ("Korologos") is, and at all material times was, a director of Vulcan.  Korologos served as a director of the Company from 1990 to 2004.  Korologos joined the Board again in 2007.  Korologos is a former U.S. Secretary of Labor.  Korologos also served as Chairman of the RAND Corporation Board of Trustees since April 2004 (RAND is a nonprofit institution that helps improve policy and decision making through research and analysis).  From October 1996 until December 2005, Korologos was a Senior Advisor to Benedetto, Gartland & Company, Inc. (an investment banking firm in New York).  Korologos also currently serves as a director of AMR Corporation, Harman International Industries, Inc., Kellogg Company, and Host Hotels & Resorts, Inc.

15.    Defendant Douglas J. McGregor ("McGregor") is, and at all material times was, a director of Vulcan.  McGregor became a director in 1992.  McGregor is also a Senior Advisor for Blue Point Capital Partners, Cleveland, Ohio (a national private equity firm), and has served in that position since January 2003.

16.     Defendant Richard T. O'Brien ("O'Brien") is, and at all material times was, a director of Vulcan. O'Brien became a director of the company in 2008. O'Brien is also the current President and CEO of Newmont Mining Corporation, Greenwood Village, Colorado (an international gold production company). From 2001 to 2007, O'Brien served in various capacities at AGL Resources, Atlanta, Georgia (a natural gas distribution, marketing and energy service company): President and Chief Financial Officer ("CFO") from 2006 to 2007, Senior Vice President and CFO from 2005 until 2006, and Executive Vice President and CFO from 2001 until 2005. O'Brien is also a director of Newmont Mining Corporation.

17.     Defendant James T. Prokopanko ("Prokopanko") is, and at all material times was, a director of Vulcan. Prokopanko became a director of the Company in 2009. Prokopanko is also the current President, CEO, and a director of The Mosaic Company ("Mosaic"), Plymouth, Minnesota (one of the world's leading producers and marketers of concentrated phosphate and potash crop nutrients), and has served in that position since 2007. From July 2006 until 2007, Prokopanko was Mosaic's Executive Vice President and Chief Operating Officer ("COO"). Prior to joining Mosaic, Prokopanko was Corporate Vice President of Cargill, Incorporated.

18.     Defendant Donald B. Rice ("Rice") is, and at all material times was, a director of Vulcan. Rice served as a director of the Company from 1986 to 1989. Rice once again joined the Company as a director in 1993. Rice is also the current President and CEO of Agensys, Inc., (a Santa Monica, California-based biotechnology company developing monoclonal antibody therapeutics for cancer, a subsidiary of Astellas Pharma, Inc.) and has served in that position since 1996. Rice is also a director of Chevron Corp and Wells Fargo & Company.

19.     Defendant Vincent J. Trosino ("Trosino") is, and at all material times was, a director of Vulcan. Trosino became a director of the company in 2003. From 1998 until December 2006

Trosino was the President, Vice Chairman of the Board and COO of State Farm Mutual Automobile Insurance Company, Bloomington, Illinois (a mutual insurance company).

20.     Defendant Kathleen Wilson-Thompson ("Wilson-Thompson") is, and at all material times was, a director of Vulcan.  Wilson-Thompson became a director of the Company in 2009. Wilson-Thompson is also the current Senior Vice President and Chief Human Resources Officer of Walgreen's Co. (the nation's largest drugstore chain), Deerfield, Illinois, and has served in that position since January 2010.  Prior to joining Walgreen's, Wilson-Thompson was Senior Vice President of Global Human Resources of The Kellogg Company, Battle Creek, Michigan (the world's leading producer of cereal and a leading producer of convenience foods).

21.     Defendants listed in paragraphs 10-20 above are collectively referred to herein as "Defendants" or "Individual Defendants."

### CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action on KBC's own behalf and as a class action on behalf of all holders of Company stock who are being and will be harmed by defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants.

23.     This action is properly maintainable as a class action pursuant to Rule 23.

24.     The Class is so numerous that joinder of all members is impracticable.  According to Vulcan's SEC filings, there were more than 129 million shares of Vulcan common stock outstanding as of September 30, 2011, held by hundreds, if not thousands, of beneficial owners.

25.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)       whether defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class as a result of their rejection and failure to consider in good faith the Marietta offer;

(b)       whether defendants are attempting to entrench themselves as managers and officers of the Company in order to preserve their lucrative and prestigious positions at the expense of maximizing shareholder value by failing to give adequate consideration to the Marietta offer;

(c)       whether defendants have breached their fiduciary duty by using defensive mechanisms to further entrench themselves as officers and/or directors of the Company;

(d)       whether defendants are attempting to unjustly enrich themselves and other insiders or affiliates of Vulcan as a result of their efforts to entrench themselves as managers and directors of the Company;

(e)       whether defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with their rejection and refusal to consider in good faith the Marietta proposal, including the duties of good faith, diligence, candor and fair dealing; and

(f)       whether defendants, in bad faith and for improper motives, have erected or improperly maintained barriers to discourage offers for the Company or its assets.

26.       Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

27.       Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

29.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

30.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## RULE 23.1 DERIVATIVE ALLEGATIONS

31.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

32.     Plaintiff brings this action derivatively in the right and for the benefit of Vulcan to redress injuries that have been suffered and are continuing to be suffered by Vulcan as a direct result of defendants' breaches of fiduciary duty and other violations of law.  Vulcan is named as a nominal party in this derivative action solely in a derivative capacity.

33.     Based on all the allegations in this action and Defendants' actions to date, including their repeated acts of entrenchment, including refusal to protect the interests of Vulcan and its shareholders by responding in good faith to value-maximizing alternatives for the Company, Plaintiff's pre-suit demand on Defendants would be futile.  Each of the members of the Board has directly participated in the wrongs complained of herein, which disables them from acting independently, objectively or in good faith to advance the interests of Vulcan or respond to a demand by shareholders.  The Board consists of eleven directors, each of whom is a Defendant herein. Defendants James, by virtue of his positions as Chairman and CEO of Vulcan, maintains complete

control over any decisions required to be made by the Board, including any action to be taken in response to a demand made by shareholders. The Board and senior management are not disinterested or independent as detailed herein and set forth below:

(a)    Each of the defendants served on the Vulcan Board during the relevant period and each Board member was charged with oversight and operation of the Company and the conduct of its business affairs. Each of the defendants has breached the fiduciary duties owed to Vulcan and its shareholders by, among other things, failing to take reasonable steps to protect and advance the interests of the Company in furtherance of their plan to advance their own interests and/or those of senior Vulcan management at the expense of and to the detriment of Vulcan and its public stockholders.

(b)    Rather than responding in good faith to offers to purchase Vulcan, management and the Board acted to protect and promote their personal interests and ensure themselves ongoing control over Vulcan and thereby ensure their continued ability to receive the benefits of their positions as senior insiders and/or directors of Vulcan.

(c)    Even though certain defendants claim to be independent directors because they are not directly employed by the Company, none of these defendants are truly independent because they each have personal and/or professional conflicts of interest with other members of the Board. As a result of these long-standing personal and professional relationships, demand on the Board would be futile.

(d)    Because the Board has utilized defensive measures to fend off potential offers to purchase the Company, the Board's defensive actions are subject to enhanced judicial scrutiny because of the omnipresent specter that the Board may be acting in its own interests rather than the interests of the Company and its shareholders.

(e)     In taking unreasonable defensive measures, the Board has demonstrated that its primary purpose in doing so was to retain control of the Company.  Under such circumstances, there is more than reasonable doubt as to the disinterestedness and independence of the Board, thus making demand futile.

(f)     As more fully detailed herein, the Board participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Vulcan's shareholders or recklessly and/or negligently disregarded the wrongs complained of herein.  Its members are, therefore, not disinterested parties.

34.     The Defendants named herein have not exercised and cannot exercise independent or objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because each of the Board members has participated in and/or acquiesced to the misconduct alleged herein.

35.     The members of the Board have demonstrated their unwillingness to act in compliance with federal or state law or sue themselves and/or their fellow directors and allies in the top ranks of the corporation for failure to do so, as they have developed professional relationships with their fellow board members who are their friends and with whom they have entangling financial alliances, interests and dependencies, and therefore, they are not able to and will not vigorously prosecute any such action.

36.     Vulcan's senior insiders and Vulcan's directors, named as defendants herein, have shown their interests to be antagonistic to Vulcan and this lawsuit as they have refused to consider in good faith options to maximize shareholder value for Vulcan and its shareholders.  The members of the Board have not and will not authorize a suit against themselves as such a suit would require these defendants to expose themselves to a huge personal liability to Vulcan, as, due to the particular

language of currently utilized directors' and officers' liability insurance policies (*i.e.*, the insured vs. insured exclusion), such an action would not be an insured claim.

37.    The underlying misconduct of defendants is not a product of a valid exercise of business judgment, and can not be properly ratified by the Board.

38.    The Company's directors' and officers' liability insurance coverage prohibits directors from bringing suits against each other.  Thus, if the Individual Defendants caused the Company to sue its officers and directors for the liability asserted in this case, they would not be insured for that liability.  They will not do this to themselves.  The Company's officers' and directors' liability insurance was purchased and paid for with corporate funds for the protection of the corporation.  This derivative action does not trigger the "insured vs. insured" exclusion, and therefore only this derivative action can obtain a recovery from the Company's officers' and directors' insurance for the benefit of the corporation.

## SUBSTANTIVE ALLEGATIONS

39.    Vulcan is a producer of construction aggregates, primarily crushed stone, sand, and gravel.  Vulcan has 319 aggregates facilities. The Company is also a producer of asphalt mix and ready-mixed concrete, as well as a producer of cement in Florida.  The Company operates four segments: aggregates, concrete, asphalt mix, and cement.  During the year ended December 31, 2010, Vulcan acquired assets of 12 ready-mixed concrete facilities located in Georgia, one aggregate facility located in Tennessee and one aggregate facility located in California.

40.    Vulcan's stock has been tumultuous over the recent period, as evidenced by the consistently downward movement of the Company's stock:



41.     All indications are that Vulcan will continue this poor performance.  Analysts note the consistent downward earnings per share trend and the negative 115.19% earnings growth rate for fiscal year 2011. http://investing.money.msn.com/investments/earnings-estimates?symbol=VMC (last visited December 23, 2011).

42.     On December 12, 2011, Marietta commenced an exchange offer pursuant to which Marietta seeks to acquire all of the outstanding shares of Vulcan at a fixed exchange ratio of 0.50 shares of Martin common stock for each share of Vulcan common stock.  The exchange offer expires on May 18, 2012.   In a conference call held shortly after the exchange offer commenced, Marietta spelled out the significant value Vulcan shareholders would receive through synergies and other positive effects of the proposed transaction:

> Our management team and board of directors strongly believes that bringing together Martin Marietta and Vulcan is a once in a lifetime opportunity to create the leading global aggregates producer and what we consider an enduring American champion and, most importantly, create substantial value for the stakeholders of both companies. In short, this is the right deal for both companies at the right time.

> For many years the investment community has commented that a combination of Martin Marietta's and Vulcan's businesses makes good sense. We, too, were driven

by the compelling industrial logic of a combination of the logic of these two companies and began conversations with Vulcan in 2002. Periodic discussions continued through the years as we framed the strategic, operational and financial logic of the combination. As we started the current phase of this journey, we were more convinced than ever of the wisdom of combining our two companies.

As many of you know, we both operate in an attractive industry that, although cyclical, has stable long-term demand fueled by infrastructure maintenance, repair and expansion in the United States. Combined Martin Marietta and Vulcan have a highly complimentary geographic footprint and an asset base, including over 28 billion tons of mineral reserves that are nearly impossible to replicate but will give us the opportunity to operate more efficiently, thereby passing on savings to our customers and shareholders.

Recent events, including the fragile state of the US economy, the lack of visibility as to when a sustainable recovery will take place, and the uncertainly surrounding increased federal government on infrastructure only strengthen the rational behind the combination and, in fact, this uncertain time is part of what drives our management team and board of directors to unanimously believe that shareholders of both companies need to engage in this process, to fully evaluate the strategic and financial benefits that flow from the combination.

In short, we believe the combined company would enjoy even greater growth opportunities and therefore create enhanced value for virtually everyone associated today with both Vulcan and Martin Marietta. We believe that our proposal is very interactive. It offers Vulcan shareholders a tax-free exchange structure, a premium, and further upside potential is shareholders of a stronger, more financially stable company with one of the industry's strongest balance sheet and credit profiles which will enable it to pay a very solid dividend.

$$*\qquad*\qquad*$$

The combined company would have a highly complementary geographic footprint, over 630 locations and an asset base including over 28 billion tons of mineral reserves that, as I've said earlier, are nearly impossible to replicate. Together the two companies would have operations in 35 states including the fastest growing states in terms of population, a key driver of construction activity.

A combined Martin Marietta-Vulcan would be the clear US leader in aggregates, producing over two and a half times that of the nearest US competitor. We are reaching out to the regulators immediately and plan to file Hart-Scott-Rodino this week.

Not only is the combined company the leading aggregates producer in the America, we would become the global leader in construction aggregates, creating what we believe would be the must-owned company for investors in the building materials sector.

- 13 -

As we framed our strategic view of this combination our unerring focus has been the significant shareholder value creation inherent in the proposed transaction. Shareholders will benefit from the realization of $200 million to $250 million in annual synergies, a meaningful dividend, and a balance sheet well positioned for cyclical recovery and growth. In addition, efficiencies gained from size and scale, a continued focus on operations excellence, and a stronger platform for long-term growth also provide for future value creation.

Based on Friday's closing prices Martin Marietta's and Vulcan's combined current equity value is approximately $7.8 billion. Assuming EBITDA improves its outline in Note 1 to Slide 8, we believe the capitalized value of the identified synergies add an incremental $2 billion to the combined equity value. Therefore, the pro forma equity value of the combined company would be approximately $9.8 billion and capitalized synergy value would represent approximately 23% to 29% of the combined current equity value, reflecting substantial value creation for shareholders of both companies.

*     *     *

Based on our internal analysis and to some extent Vulcan's public findings, we have conservatively identified between $200 million and $250 million in annual synergies, driven by improved purchasing efficiency resulting from greater scale and elimination of duplicating and SG&A functions. At these levels we would incur a one-time cost of one year of synergies to realize this value and would expect the full value of the annual synergies to be realized over 2 to 3 years.

Our ability to realize these synergies would be a direct result of our management team's proven cost management leadership. . . .Martin Marietta has achieved an average SG&A as a percentage of net sales of approximately 8.4% since the beginning of 2007. We have operated right around that level every year and this year we're performing exceptionally well at 7.9% through the first three quarters of 2011.

We're confident that working together with the best of the best people from both companies will capture best practices across our combined organizations, yielding a powerful value creation opportunity.

We believe that the combined company will have more than enough financial flexibility to return capital to shareholders in the form of a meaningful dividend on a sustained basis as we have since becoming a public company. Looking back to 2005, you will see that Martin Marietta steadily increased its annual dividend for several years and has maintained a high level — $1.60 per share — for a dividend yield of over 2%, even during this extended economic downturn.

Vulcan also increased its dividend through 2008 but during the downturn its dividend actions have been different with significant cuts in 2009 and 2010, and just a few weeks ago a reduction of quarterly dividend to a penny a share. We expect the combined company to pay a dividend at Martin Marietta's current rate — $0.40 on a quarterly basis, or $1.60 annually if this proposed transaction is completed. For

Vulcan shareholders this will be equivalent of an annual dividend at the rate of $0.80 per current Vulcan share based on the exchange ratio we've proposed.

Vulcan has stated that one of its core objectives is to a deleveraged balanced sheet. As of September 30, 2011 Vulcan's net debt to adjusted EBITDA is 8.9 times. This combination meaningfully accelerates their deleveraging. Based on our current analysis, and assuming the realization of the previously discussed synergies, the combined companies' net debt adjusted EBITDA is estimated at 4.1 times to 4.3 times, a significant reduction of over 5 turns of leverage.

The financial position of the combined companies remains quite strong, with a balance sheet that possesses sufficient liquidity, no maintenance-based debt covenants, and minimal near-term maturities. In fact, after refinancing our existing revolving credit facility, term loan and securitization facility, debt maturities are minimal over the near term and through 2016, providing the combined company with ample latitude to navigate the cyclical recovery.

With nearly $4 billion in net sales, over 630 facilities and total reserves of over 28 billion tonnes, the combination of Martin Marietta and Vulcan provide significant scale advantages but perhaps what's most important here is when we realize the identified $200 million to $250 million of synergies our combined trailing 12-month adjusted EBITDA of $651 million increases over 30%, to a range of $850 million to $900 million with adjusted EBITDA margins over 20%.

*       *       *

[O]ur two companies currently have a little more than 7% share of the US aggregates market and combined would have an approximate 15% share, still a relatively modest percentage but it also reflects an outstanding growth in what remains a highly fragmented industry.

43.     The writing is on the wall, however, for Defendants. As a result of the synergistic benefits available to Vulcan's shareholders that would be able to capitalize on immediate earning potential in a combined business entity with Marietta, Defendants and Vulcan management would stand to lose their lucrative positions. For example, Defendants and Vulcan management would stand to lose long term incentive and other benefits, as well as the following salaries and benefits:

| Name and Principal Position | Year | Salary ($) | Bonus ($) | Stock Awards[1] ($) | Option Awards[1] ($) | Non-Equity Incentive Plan Compensation[2] ($) | Change in Pension Value And Nonqualified Deferred Compensation Earnings[3] ($) | All Other Compensation[4] ($) | Total ($) |
|---|---|---|---|---|---|---|---|---|---|
| Donald M. James | 2010 | 1,250,004 | 0 | 1,305,906 | 1,460,450 | 0 | 3,889,276 | 167,346 | 8,072,892 |
| Chairman and | 2009 | 1,250,004 | 0 | 1,366,571 | 3,469,689 | 0 | 4,763,796 | 239,799 | 11,089,819 |
| Chief Executive Officer | 2008 | 1,241,670 | 0 | 1,334,021 | 1,482,000 | 0 | 5,047,044 | 431,049 | 9,535,784 |

| Name[1] | Fees Earned or Paid in Cash ($) | Stock Awards[2] ($) | Option Awards ($) | Non-Equity Incentive Plan Compensation ($) | Change in Pension Value and Nonqualified Deferred Compensation Earnings ($) | All Other Compensation[3] ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Philip J. Carroll | 104,000 | 89,771 | 0 | 0 | 0 | 6,923 | 200,694 |
| Phillip W. Farmer | 112,500 | 89,771 | 0 | 0 | 0 | 7,170 | 209,441 |
| H. Allen Franklin | 99,000 | 89,771 | 0 | 0 | 0 | 11,269 | 200,040 |
| Ann McLaughlin Korologos | 85,000 | 89,771 | 0 | 0 | 0 | 5,162 | 179,933 |
| Douglas J. McGregor | 103,500 | 89,771 | 0 | 0 | 0 | 16,552 | 209,823 |
| James V. Napier | 97,000 | 89,771 | 0 | 0 | 0 | 8,375 | 195,146 |
| Richard T. O'Brien | 92,500 | 89,771 | 0 | 0 | 0 | 2,900 | 185,171 |
| James T. Prokopanko | 84,500 | 89,771 | 0 | 0 | 0 | 904 | 175,175 |
| Donald B. Rice | 103,500 | 89,771 | 0 | 0 | 0 | 13,284 | 206,555 |
| Vincent J. Trosino | 95,500 | 89,771 | 0 | 0 | 0 | 8,880 | 194,151 |
| Kathleen Wilson-Thompson | 88,000 | 89,771 | 0 | 0 | 0 | 904 | 178,675 |

44.     Thus, in order to entrench themselves in their current positions at Vulcan, Defendants instituted a lawsuit to enjoin Marietta's exchange offer.  The lawsuit contends that the exchange offer is the result of unclean hands and based on information that Marietta should not have been able to use pursuant to a confidentiality agreement.  This is merely a defensive measure aimed at thwarting maximum value for Vulcan's shareholders.

45.     Indeed, on December 22, 2011, Defendants caused Vulcan to file a 14D-9 for the stated purpose of providing Vulcan shareholders with sufficient material information with which to decide whether to accept or reject the exchange offer.  However, in order to further thwart the exchange offer, 14D-9 omits substantial material information that deprives shareholders from the ability to determine whether or not the exchange offer is fair.  The 14D-9 states that Goldman Sachs, the financial advisor Vulcan hired to evaluate the fairness of the exchange offer, does not believe that the exchange offer is fair to Vulcan's shareholders from a financial point of view.  However, the 14D-9 omits the material information as to why Goldman Sachs believes that, including details of the analyses Goldman Sachs performed to come to that conclusion.  Likewise, the 14D-9 omits material information about how the April 22, 2010 meeting between Defendant James and the Marietta representative was initiated, which would further enlighten shareholders about Vulcan's prospects of receiving a proposal superior to the Marietta exchange offer.

46.     The 14D-9 also omits details regarding the following material information:

(a)     The amount of fees expected to be received by Goldman Sachs upon delivery of its opinion and how much was to be paid upon successful completion of the transaction;

(b)     The specific services Goldman Sachs has provided to any of the parties involved in the proposed transaction, or their affiliates, in the last two years and how much compensation was received for services rendered;

(c)     The amount of fees expected to be received by MacKenzie Partners for its services;

(d)     The amount of fees expected to be received by Sard Verbinnen for its services; and

(e)     The detailed financial projections provided by Vulcan management and relied upon by Goldman Sachs in its analyses for years 2012-2016.

47.     Without these and other material details about the proposed transaction contemplated by Marietta and the Board's reasons for not recommending in favor of it, Vulcan shareholders cannot intelligently determine whether to accept or reject the exchange offer.  Vulcan shareholders have no adequate remedy at law to address this irreparable harm.

## COUNT I

### Derivative Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

48.     Plaintiff repeats and realleges each allegation as though fully set forth herein. Plaintiff brings this claim derivatively on behalf of Vulcan.

49.     The Individual Defendants failed to act reasonably or in good faith in an effort to maximize Company and shareholder value.  Rather, the Individual Defendants took actions designed to impede the maximization of that value in order to allow them to retain their control over, and emoluments associated with, their positions as directors and/or senior insiders of Vulcan.

50.     The Individual Defendants have violated their fiduciary duties of care, loyalty, good faith, candor and independence owed to Vulcan and have acted to put their personal interests ahead of the interests of Vulcan.

51.     The Individual Defendants were and are under a duty to:

(a)     fully inform themselves of the market value of Vulcan before taking, or agreeing to refrain from taking, action;

(b)     act in the best interest of Vulcan; and

(c)     act in accordance with their fundamental duties of due care, good faith, independence, loyalty and candor.

52.     The Individual Defendants have violated their fiduciary duties by failing to give reasonable and good faith consideration to offers for the Company that will maximize Company and shareholder value, and by adopting and maintaining defensive measures that prevent shareholders from being able to freely decide whether to accept or reject offers for the Company, including the exchange offer from Marietta.  The Individual Defendants directly breached and/or aided and abetted the other defendants' fiduciary duties to Vulcan.

53.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, care, candor and independence owed to the shareholders of Vulcan because, among other reasons, they failed to properly and adequately consider offers to purchase Vulcan and take other necessary steps to maximize the value of Vulcan.

54.     Because the Individual Defendants dominate and control the business and corporate affairs of Vulcan, and are in possession of private corporate information concerning Vulcan's assets (including the knowledge of other undisclosed bids for the Company), business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the

public shareholders of Vulcan which makes it inherently unfair for them to reject any proposed transaction or strategic alternatives for the Company for the sole purpose of entrenching themselves as managers and directors of the Company, to the exclusion of maximizing Company value.

55.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Vulcan.

56.    The Individual Defendants are engaging in self dealing, are not acting in good faith toward Vulcan, and have breached and are breaching their fiduciary duties to Vulcan.

57.    Each of the Individual Defendants has knowingly participated in the unlawful conduct alleged herein in order to advance his own economic interests, or the interests of friends and colleagues, to the detriment of Vulcan.

58.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, on their own and as part of a common plan, and in breach of their fiduciary duties to Vulcan, are engaging in acts that will irreparably harm the Company.

59.    As a result of these defendants' unlawful actions, Vulcan is being and will be irreparably harmed.  Unless defendants' actions are enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Vulcan and will continue to engage in a process that harms Vulcan and inhibits the maximization of the Company and shareholder value.

## COUNT II

### Class Claim for Breach of Fiduciary Duties
### Against the Individual Defendants

60.    Plaintiff repeats and realleges each allegation set forth herein.  Plaintiff brings this claim directly on behalf of Vulcan's public shareholders.

61.    The Individual Defendants have violated fiduciary duties of care, loyalty, candor, good faith and independence owed to the public shareholders of Vulcan and have acted to put their personal interests ahead of the interests of Vulcan shareholders.

62.    By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, have violated their fiduciary duties by disenfranchising Vulcan's public shareholders, and by failing to give adequate consideration to the Marietta offer for Vulcan without regard to the fairness of the transaction to Vulcan shareholders, or the premium that this offer represents to the public shareholders of the Company.

63.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, candor and independence owed to the shareholders of Vulcan because, among other reasons:

(a)    they failed to properly and adequately consider the premium non-coercive offer by Marietta, or take other necessary steps to maximize the value of Vulcan to its public shareholders;

(b)    they failed to properly maximize the value of Vulcan common shares; and

(c)    they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships in connection with their refusal to consider these bona fide and legitimate premium offers.

64.    Because the Individual Defendants dominate and control the business and corporate affairs of Vulcan, and are in possession of private corporate information concerning Vulcan's assets, business and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of Vulcan which makes it inherently unfair for them reject any proposed transaction for the sole purpose of entrenching themselves as managers and directors of the Company, to the exclusion of maximizing stockholder value.

65.     By reason of the foregoing acts, practices and course of conduct, these defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

66.     As a result of the Individual Defendants' actions, plaintiff and the Class have been and will be harmed.

67.     The Individual Defendants are engaging in self dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, as follows:

A.      Declaring that this action is properly maintainable as a class and derivative action;

B.      Declaring and decreeing that defendants' conduct has been in breach of the fiduciary duties owed by the Individual Defendants to the Company's public stockholders;

C.      Declaring and decreeing that defendants' refusal to consider and respond in good faith to the offers to acquire Vulcan is in breach of the fiduciary duties owed by defendants to the Company's shareholders and ordering defendants to comply with said fiduciary duties;

D.      Directing the defendants to refrain from advancing their own interests at the expense of Vulcan or its shareholders and exercise their fiduciary duties to act reasonably and respond in good faith to offers which are in the best interest of Vulcan and its shareholders;

E.      Directing defendants to establish a committee of independent directors or, given that no such independent directors exist, engage an independent third party, advised by financial and legal advisors that do not have ties to the Company or the Board, to evaluate strategic alternatives

and potential offers for the Company, and to take decisive steps to maximize Company and shareholder value;

F.     Prohibiting defendants from entering into any contractual provisions which harm Vulcan or its shareholders or prohibiting defendants from maximizing shareholder value, including any confidentiality agreement or contract designed to impede the maximization of shareholder value;

G.     An order retraining Defendants from adopting, implementing, instituting or enforcing any defensive measure that has or is intended to have the effect of making the consummation of an offer to purchase the Company more difficult or costly for a potential acquiror;

H.     Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

I.     Granting such other and further relief as this Court may deem just and proper.


**JURY DEMAND**

Plaintiff demands jury trial on all issues so triable.

DATED:  December 23, 2011

/s Robert E. Battle             .
Robert E. Battle (ASB-7807-T67R)
Harlan F. Winn, III (ASB-7322-N73H)
Adam P. Plant (ASB-6324-A64P)
Attorneys for Plaintiff

OF COUNSEL:
BATTLE & WINN LLP
2901 2nd Avenue South, Suite 220
Birmingham, AL 35233
Tel.: (205) 397-8160
Fax: (205) 397-8179
Email: rbattle@battlewinn.com
hwinn@battlewinn.com
aplant@battlewinn.com


MOTLEY RICE LLC
Ann K. Ritter
Lance V. Oliver
Rebecca M. Deupree
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
Telephone:  (843) 216-9000
Facsimile:  (843) 216-9450

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 E. Palmetto Park Road
Boca Raton, FL  33432
Telephone:  (561) 750-3000
Facsimile:  (561) 750-3364

ROBBINS GELLER RUDMAN & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  (619) 231-1058
Facsimile:  (619) 231-7423

Attorneys for Plaintiff

*Please serve Defendants by certified mail at the following addresses:*

Vulcan Materials Company
c/o CSC Lawyers, Inc.
150 South Perry Street
Montgomery, AL 36104

Donald M. James
2933 Fairway Drive
Mountain Brook Al 35213

Philip J. Carroll, Jr.
2121 Kirby Drive, Unit 34S
Houston, TX 77019

Phillip W. Farmer
3380 North Riverside Drive
Indialantic, FL 32903

H. Allen Franklin
1228 Antioch Road
Lagrange, GA 30240

Ann McLaughlin Korologos
3150 South Street NW, Apt 2A
Washington, DC 20007

Douglas J. McGregor
6 Country Lane
Cleveland, OH 44124

Richard T. O'Brien
2376 South Lafayette Street
Denver, CO 80210

James T. Prokopanko
25990 Birch Bluff Road
Excelsior, MN 55331

Donald B. Rice
10126 Empyrean Way, Apt 103
Los Angeles, CA 90067

Vincent J. Trosino
23 Timberlake Road
Bloomington, IL 61704

Kathleen Wilson-Thompson
1907 North Burling Street
Chicago, IL 60614

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| KBC ASSET MANAGEMENT NV, on behalf of itself and all other similarly situated, , | ) ) ) ) | Civil Action No. _____ |
| Plaintiff(s), | ) ) | |
| vs. | ) ) | |
| DONALD M. JAMES, PHILIP J. CARROLL, JR., PHILLIP W. FARMER, H. ALLEN FRANKLIN, ANN MCLAUGHLIN KOROLOGOS, DOUGLAS J. MCGREGOR, RICHARD T. O'BRIEN, JAMES T. PROKOPANKO, DONALD B. RICE, VINCENT J. TROSINO, and KATHLEEN WILSON-THOMPSON, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| VULCAN MATERIALS COMPANY, | ) ) | |
| Nominal Defendant. | ) | |

**DECLARATION OF ASSIGNMENT BY KBC INDEX FUND
OF ACTION INITIATED BY KBC ASSET MANAGEMENT NV**

**EXHIBIT A**

We, Guido Billion and Peter Marchand, hereby declare as follows:

1.  We are the Directors of the KBC Index Fund (the "Fund") and we have personal knowledge of all matters stated herein.

2.  The Fund is governed by Belgian law.

3.  KBC Asset Management NV ("KBC") will commence an action captioned *KBC Asset Management NV v. Vulcan Materials Company, et al.* (the "Lawsuit") on behalf of investment funds managed by KBC, to recover damages incurred by such funds in connection with purchases of shares of Vulcan Materials Company.

4.  KBC has authority, under its investment management agreement, to commence this Lawsuit, and to act on behalf of the Fund.

5.  On behalf of the Fund, we hereby execute and submit this declaration: (a) authorizing the actions of KBC in commencing and pursing the Lawsuit on behalf of the Fund; (b) declaring that the Fund will be bound by the result of the Lawsuit; and (c) assigning, to KBC, any and all claims of the Fund and its sub-fund, KBC Index Fund – United States, against defendants in the Lawsuit.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Brussels, Belgium on December __21__, 2011.

For KBC Index Fund:

Assignor
Guido Billion

Assignor
Peter Marchand

For KBC Asset Management NV:

Peter Buelens

Chris Sterckx

**EXHIBIT A**